[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Leon Beaudoin seeks to collect insurance benefits for a loss incurred when a printing press was destroyed in a fire. The plaintiff also seeks damages on the grounds the defendant committed an unfair claim settlement practice; see General Statutes § 38a-816(6), and an unfair trade practice; see General Statutes § 42-110a. The defendant denies the printing press was insured at the time of the fire. The parties tried the case before this court. The court concludes that the press was not "covered property," as that term is used in the insurance policy, and enters judgment for the defendant.
The plaintiff markets used flexographic printing presses. In March of 1992, the plaintiff purchased two such presses in Cleveland, Ohio, and stored them in a machine shop where they were CT Page 7446 located at the time of his purchase. In March of 1993, the plaintiff found a buyer for one press. The buyer, Lablecraft Products, Ltd., sent the plaintiff a deposit check for $3,900.00 with a letter wherein the buyer stated "the balance of $35,100.00 U.S. Funds will be sent by certified cheque." The plaintiff issued an invoice for the press on which he stated "price $39,000.00" and the following:
 "Equipment is sold on an as is/where is basis, F.O.B. point of origin . . . . Shipment will be made Freight Collect upon receipt of certified check or company check. All checks must clear our bank prior to shipment of unit."
After the plaintiff and Lablecraft Products, Ltd. agreed on the sale, the plaintiff contacted a moving company and retained a Chicago company to prepare the press for shipment. The Chicago company prepared the press for shipment. On May 14, 1993, the machine shop and press were destroyed in a fire. At the time of the fire, Lablecraft, Ltd. had not paid the balance of the purchase price. After the fire, the plaintiff found another machine for Lablecraft, Ltd.
The plaintiff contends the press was "covered property" at the time of the loss. He points out the press had been sold, packed and prepared for shipping. He relies on the part of the Transportation Coverage Form which extends insurance coverage to outgoing shipments of "covered property." The defendant, on the other hand, contends that the press was not "covered property" at the time of the loss because the policy only covers property "in due course of transit" and excludes property "held in storage and warehoused."
The insurance policy indicates that the "type of coverage" is "transportation coverage;" that the coverage applies to "common carriers" and "contract carriers;" that the covered property is "flexolabel presses, and similar associated items usual to your business;" and that the coverage is provided only for "incoming shipments to your premises" and "outgoing shipments from your premises." The term "coverage" is defined in the policy on a form entitled "Transportation Coverage Form (Shipper's Interest)." The term is defined as follows:
"A. COVERAGE
CT Page 7447
 We will pay for direct physical `loss' to Covered Property caused by any of the Covered Causes of Loss.
 1. Covered Property, as used in this Coverage Form, means property while in due course of transit at your risk . . . .
 If Covered Property is owned by others, we will extend the insurance to pay for `loss' to such property caused by a Covered Cause of Loss.
 2. Property Not Covered
Covered Property does not include:
d. Property which is held in storage or warehoused.
 But this exclusion does not apply to such property which is in temporary storage during the due course of transportation.
 4. Coverage Extensions
. . .
c. F.O.B. Shipments
 We will extend the insurance provided to cover `loss' caused by a Covered Cause of Loss to outgoing shipments of Covered Property which has been sold by you under `F.O.B. point of shipment or origin terms.'
 You must use all reasonable means to collect the amount due you from the buyer before making a claim under this Coverage Extension.
. . .
F. DEFINITIONS
CT Page 7448
1. `Loss' means accidental loss of damage.
2. `Specified causes of loss' means: fire; . . .
 5. `F.O.B. point of shipment or origin terms' means that your contract of sales states that the risk of `loss' to the property is transferred to the buyer when such property leaves your premises in the due course of transit for delivery."
The insurance policy provides transportation insurance. For coverage to be effective, property must be damaged "while in due course of transit." Here, the fire occurred before the shipper had arrived at the place where the press was stored. At the time of the fire, the press had not left the control of the plaintiff. It had not been put "in due course of transit." Because the press was not in transit at the time of the loss, it was not "covered property." This conclusion is consistent with the rulings of other courts in similar situations. Brammer Corp. v. Holland-AmericaInsurance Co., 34 Misc.2d 337, 228 N.Y.S.2d 512 (1962); Anno: Insurance-Coverage-"In transit" 80 ALR 2d 445, 448 § 3 (1961); 10A Couch on Insurance 2d §§ 42: 167 et seq. (1982).
The policy also provides that property which is held in storage is excluded from coverage. The press was still in storage at the time of the fire. Shipment had not commenced.
The defendant properly denied coverage. It did not engage in an unfair settlement act or an unfair trade act.
Judgment shall enter for the defendant.
THIM, JUDGE